of America, Arguments Not to Exceed, 20 Minutes per Side, Mr. Hutton for appellate. Your Honor, I have reserved three minutes for rebuttal. Okay. Chief Judge Cole, may it please the Court, this case presents two separate issues concerning the attachment of the Sixth Amendment right to counsel. First, this Court should hold that the right to counsel protects an accused during plea negotiations with a prosecutor, even if the prosecutor chooses to make an offer prior to the formal commencement of judicial proceedings. Second, this Court should follow the Second and the Eighth Circuits and hold that a state court criminal prosecution will trigger the Sixth Amendment right to counsel for a forthcoming federal prosecution for the same underlying offense, especially when federal agents were involved in the initiation of the state court proceedings. Now, in addition to answering whatever questions the Court may have today, I'd like to go right to the heart of the two objections that the government has raised in their brief. With respect to the first issue, the government argues that this Court has no power to find the Sixth Amendment right to counsel attaches during pre-indictment plea negotiations. It argues that based upon language in United States v. Govia, 1984 Supreme Court case, borrowing the language from Kirby, that says that the right to counsel attaches with the commencement of formal judicial proceedings. Now, it is true that Govia, the opinion, does say that. But right after that language in the Govia opinion, it also says the reasoning that the Court is saying that. The Court says, it is then that a defendant finds himself faced with the prosecutorial forces of organized society and immersed in the intricacies of substantive and procedural criminal law. So you have a statement in the opinion followed by the purposes. The purposes are to counterbalance the professional prosecutor and to assist the defendant in navigating the law. Now, what I would submit to this Court is that those same purposes are fulfilled in plea bargaining, where a defendant like Mr. Turner is facing a professional adversary. He has to evaluate are there any valid defenses, are there any evidentiary issues, what are the guidelines, and has to make a decision responding to that. Mr. Hutton, could I ask you a question? Yes, Judge McGee. Let's assume that the majority of the Court agrees with you that the Sixth Amendment right to counsel can attach prior to formal judicial proceedings before a judicial officer. So we're trying to figure out where this imaginary line is drawn between investigatory and accusatorial activities. Let's also assume that we agree with you that the matter of making a plea offer before charges have been filed does cross that imaginary line. Yes, Judge. How does that then work? Nobody in these briefs speaks to just some of the practical considerations. There is no case, there is no docket. Whose obligation is it to get particularly an indigent person counsel? Where do they go? Do they then involve a judicial officer by saying, hey, I'm thinking about making an offer, you better appoint a guy for a case that doesn't exist? You get the drift. That's a couple of questions, and if I can try to unpack those. The first is the way the Court would answer this is the same way that the Supreme Court has done through all of its Sixth Amendment jurisprudence. Remember that the Sixth Amendment originally only applied to a right to trial. The Court originally said you have a right to, in 1791, the understanding of criminal prosecution was a right at trial. But what the Court did over history is it applied to different facts, which it determined to be critical proceedings, looking at the purposes of the amendment, to counterbalance the prosecutor and also when a person needed assistance navigating the intricacies of the law. And it did so on a case-by-case basis. It found that applied to preliminary hearings, then it applied to post lineups, and then applied to arraignments. We're asking this Court to say that all this Court has to do today is look at the facts of this case and say, you know, the Sixth Amendment talks about a prosecution. Here we have a prosecutor that's making a specific offer for a specific amount of time and says if you don't take this, then you're going to be indicted. So all this Court has to do is to do that. Now, four other circuits have authored opinions. Never answered his practical question. Your Honor, under 18 U.S.C. 3006a, the Court has the power to appoint a lawyer whenever the Constitution requires it. I'm sorry, I don't know. I assume you're a regular criminal defense attorney, correct? I'm sort of a generalist, Your Honor. Yes, I practice. When the U.S. sends out a target letter, they always offer to get counsel for the defendant. That's my understanding in the district, yes, Your Honor, and that the federal defender will represent somebody and approach a court if there's a target letter. That's my understanding. So are you aware of any cases where someone wasn't represented by counsel pre-indictment in the federal system? Because what AUSAs don't like negotiating directly with defendants, and even when they talk to a defendant with an agent present, they will always say, we're going to make you a plea offer so you can cooperate, but you better go run it by an attorney before you say anything to us. In Judge Tapar, that is my experience as well. But just to be clear, you have to supply the attorney if they couldn't afford one, right? If the Sixth Amendment applied, the offer comes? Yes, Your Honor. Under Gideon, if it wants the Sixth Amendment right to attaches, those are the policies. That's not a DOJ. There is no vehicle yet, I don't think, unless Judge Tapar knows of one, where then you're going to get a CJA lawyer or somebody like that. Your Honor, two points. There is a mechanism. If one looks at, I believe it's 18 U.S.C. section 3006A is the appointment statute, and it has the different reasons that a court can appoint counsel. I don't think it contemplates appointment of counsel in this context, and certainly the judiciary doesn't have an appropriation for that. Judge Gibbons, I do know, I don't have the statute in front of me. I apologize. I haven't read it in about a month. But one of the criteria for appointment of counsel is when it's constitutionally required by the Sixth Amendment. And I do know that the federal defender has, when people, for example, get a target letter and they're indigent, gone to the federal defender's office, and then they've approached a magistrate for appointment in a particular case. Okay. So the answer is somehow behind the scenes somebody will go approach a magistrate and that's how you'll get the attorney appointed? They could. And, Judge McKee, you're correct that in most of these cases there's already a lawyer that's involved. The reason that the issue is here is because our argument is that Mr. Turner's lawyer was ineffective, but only in order to raise ineffective assistance of counsel, you have to have a right to counsel to begin with. It is my experience that usually U.S. attorneys want lawyers involved in cases. They'd rather deal with a lawyer than a pro se person. It's a lot easier to deal with. What's the remedy here? Let's assume down the road we agree with you, and you get ineffective assistance and you win that. Yes, Your Honor. What's the remedy? The remedy is for the court to reinstate the 15-year offer. How can we do that? We would, in effect, be ordering the executive branch to remake an offer that no longer exists. Your Honor, that was the issue before the Supreme Court in Lafleur v. Cooper in 2012. But if you look at Lafleur. That was the remedy issue. I'm sorry. I didn't mean to interrupt you. No, no, no. Go ahead. I'm sorry. I interrupted you. No, that was the issue that the court in the campaigning cases for Ryan Lafleur, they struggled with what is the remedy. That was the big issue in the case. And what Justice Kennedy in the majority opinion said is the remedy is to send it back for the lower court to remake that particular offer. And we know in this case that... Wait. First of all, that's a different issue in my mind only because here we're talking about separation of powers. There maybe we're talking about state sovereignty. But what you're asking is us to order the executive branch to offer something that no longer exists. Your Honor, all I can say to answer Your Honor's question is that that was precisely the issue before the court in 2012 in Lafleur v. Cooper. The remedy question, in Justice Kennedy's opinion, held that that was the appropriate remedy. But you understand what I'm saying. Giving it to a state trial judge and saying, figure this out, which is what they did in Lafleur, Missouri, and try to get the same situation, and ordering a co-equal branch of government to extend an offer are two different things. I mean, where do we have the authority in the Constitution to do that? Okay. Well, Your Honor, with respect to all I can say is I'm aware that the campaigning cases in Missouri v. Frye and Lafleur, and they were both state cases. But the issue and the reason the court took those cases, they were sort of the flip side. One was a lawyer that messed up by not telling his client about an offer, which was Missouri, which is my case. And the other one was a lawyer that said, don't take that offer, let's go to trial, and he didn't even look at the case. So, Mr. Hutton, I wanted to ask this question, because I thought that the issue that you wanted us to address is, is there a right to counsel at this pre-indictment stage, whether there's a bright line or not a bright line, and that there was some disagreement at the lower court about whether or not the offer was communicated or not. So if we determine that a right to counsel does exist for this pre-indictment conduct, then, for this court at least, you're asking for then a hearing at the lower court to make some determination of whether or not there was an effective assistance. Are you not? Yes, Your Honor. This came to the court on a 2255 motion, and normally you would have an evidentiary hearing on your ineffective assistance to counsel claims. But Judge Mays basically denied the hearing his moot because he found that there was no right to counsel at all, and therefore you can't complain. So he never decided the particular issue. So, next question. Some of the case law says, well, the right to counsel attaches at the critical stage, and here you have to look at whether or not it's gone beyond the investigative stage to the accusatory. In this case, when did that cross the line, go from investigatory to become a judicial proceeding? Your Honor, we have two separate alternate responses to that. The first is it crossed the line when a U.S. attorney made a specific offer to Mr. Turner's lawyer. At that point, the government is no longer investigating. Now, remember, Mr. Turner had already confessed, signed a full confession to all the robberies. But when he, when the U.S. attorney said, I'm offering you 15 years on the forward 1951 account to the 924, and if you don't take it, you're going to be indicted in September, that's when they crossed the line, as Moran V. Burbin talks about, from going from investigating a case to prosecuting a case. But we also, Your Honor, have a separate issue. There were four pending state court indictments for robbery at the time, and we're also urging this court to follow the Second Circuit's... ...new issue, just out of curiosity. Yes, Your Honor. Are you familiar with Teague v. Lane? Yes, Your Honor. Well, the old Teague, yes, the pre... Collater Review case, and the Teague rule says that you don't apply a new rule on Collater Review unless the U.S. Supreme Court, one, has announced a new rule, and then the U.S. Supreme Court has said it applies retroactively, which it does not do very often. Now, it's probably a forfeitable argument, and I don't think the government has raised it, but I'm raising it. Okay. And we have discretion to reach it, and surely the next case, the government has the right to raise it. This is surely a new rule, so I find myself really puzzled that we're doing this on a 2255 as opposed to direct review. It's an unfair question because it hasn't been briefed. Okay. You can just say it's an unfair question. I will do my best, Your Honor. I'm here to serve. But if you know Teague, tell me why it doesn't apply. Well, my understanding with Teague from my capital experience is when there's a clearly established rule for Collater Review, but my... It's a question of what you do with new rules, and surely this is a new rule. But, Your Honor, if we also look, though, at the more recent case of the Supreme Court, this is the first opportunity to raise an ineffective assistance to counsel claim. Remember, we have a guilty plea with a lawyer, but ineffective assistance because you have to have an evidentiary hearing to develop the rule. The question you look at at Teague, in Teague with state cases, you had all that state post-conviction. So there was a whole state court proceeding where you could develop a record on why the lawyer was ineffective. But, Your Honor, I would say here that the first reasonable opportunity, the first opportunity you get a hearing to develop the claim, is at the 2255, which is the sort of federal court's equivalent of a post-conviction rule. The second thing, Your Honor... I didn't realize that was an exception to Teague. Maybe it is. That's news to me. Okay. I'm sorry, Your Honor, did I not answer you? If it's an ineffective assistance claim on Collater Review, it is okay for a lower court to announce a new rule in that context and apply it retroactively. That's news to me. Maybe it's true. I'm sorry. I would take exception, Your Honor, respectfully with we're announcing a new rule. What we're saying is the rule all along on the Sixth Amendment. Our point is the government is misinterpreting Govaya. The holding in Govaya is merely that a prisoner in administrative detention has no right to the appointment of counsel when he's detained in administration. The opinion talks about the reasoning under the Sixth Amendment. And if you look at all of the Supreme Court's jurisprudence on how to figure out if there's a right to counsel, going back to Powell v. Alabama, they look at the purposes. We know that originally the Sixth Amendment only meant you had a right to counsel at trial. But the court has said in Wade, which goes back to 1964, that we extend that to pretrial proceedings that are deemed critical if there's a need for an adversary and to navigate the intricacies of the law. What about Roth, Gary? Because you don't talk about that a lot. And that's post all of these cases, right? And it deals with Kirby and it deals with Govaya. And it says, and I'm going to read to you, we merely reaffirm what we have held before and what an overwhelming majority of American jurisdictions understand and practice. A criminal defendant's initial appearance before a judicial officer where he learns the charge against him and his liberty is subject to restriction marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right. So what you've done is blurred the critical stage and the attachment. The critical stage goes to the last part of the Sixth Amendment. And all criminal prosecutions goes to the attachment. And what that case says is nothing attaches before then. And that's post all those other cases. So it would be a new rule. And, in fact, I don't think you can point to a single Supreme Court case that predates that time period. Well, Your Honor, I would respectfully disagree with the reading of Roth. Roth, Gary, did talk about attachment. We agree that when there are judicial proceedings, the Sixth Amendment right attaches from that point forward. I said start. I mean, that's just unambiguous. We're bound. I'm sorry, Your Honor. No, I'm sorry. No, please, go ahead. But in dealing with these cases, judges are reviewing a set of facts and writing an opinion based on those facts. The facts in Roth, Gary, was a 1983 suit, and whether or not when a person went to court on an initial appearance, a bailer ran and he had a right to counsel and he could sue because he didn't get one. They repeat language from other cases. And, yes, the court, Roth, Gary, quoted from Moran v. Bourbon, quoted from Gavia, which quoted from Kirby v. Illinois. But these cases, when you look at them, they have that language, but they immediately follow that language with the purpose for the rule. How does this old rule work? Does it work that you've got to have a formal plea? Is it that it's triggered because there's a deadline? I would think it, to the extent this is a good idea, I would think it applies the first time the prosecutor talks to somebody. Because those informal conversations are very likely to influence the way things go. So I take it the way this rule would work is as soon as the prosecutor talks and the question of some kind of plea comes up, counsel first, right? Your Honor, I would think looking with Judge Sutton, when a prosecutor makes a specific offer to resolve specific charges. I mean, I would be just as nervous about the prosecutor talking to the individual casually. Nothing specific. Hey, you know, there's a lot out there. You face a lot of time. We're just kind of wondering what you might like to do. Or an offer of cooperation, to add to that. Yeah, right, right, exactly. What I would say is, again, you get into it. I understand, Judge Sutton, your question with respect to trying to figure out the degree when this is triggered. I can tell you that in this particular case, I know you're looking for a rule to establish, but at least when there's a formal offer to resolve specific charges with specific time, that's going to end because you're going to be indicted in a month. Judge McKee's question, which is how is this going to work. I don't know, it makes me nervous that all you want to say is we win today. That's a classic answer. How would you like to know how the next case is going to look? I think part of that goes back to something that Judge Parr said, is that normally the U.S. attorneys want to deal with attorneys anyway. So normally the person's going to have a lawyer, and then the question gets into whether or not the defendant, if the lawyer botches it, if he fails to make the offer, fails to relay it to the defendant in time, does he have any kind of actionable claim for ineffective assistance of counsel? You're aware of the amicus brief that's been filed by the National Association for Public Defense, right? Yes, Your Honor. You don't draw the line where you draw it, as I understand their brief. You draw the line when a formal plea offer is made, which I would assume means written, but I don't know if that's what you mean. They talk about how this right attaches to any pre-indictment plea negotiations, whether formal or informal. So that's the next case that we're going to face, and I understand you can say, well, I'm only trying to nudge you towards a written plea offer. I'm taking it when it fits in my facts, Your Honor, that's what I'm arguing. So you don't agree with them, or you wouldn't go that far? Well, Your Honor, what we're interpreting is what is a criminal prosecution? Because, remember, Your Honor was correct. The text is, in all criminal prosecutions, an accused shall have the right to the assistance of counsel for his defense. We know that originally a criminal prosecution only met trial. That's what it meant back in 1791, and we know that the court has extended that on a case-by-case basis, looking at the purposes. But isn't it the courts to extend then? How can a lower court do it? Because the court is extending what was once established, right? And they're extending it. Isn't it for them to do? It happens all the time. Courts of appeals do this all the time. Look at Riley v. California. Riley was the case. Remember, the old law was search incident to a lawful arrest. Basically, if you're jaywalking, the police stop you. They can search you. They can get anything on you. The courts changed that to say, no, you need a warrant. That's where the line is. I'm sorry, Your Honor. Go ahead. No. But the lower courts were in disarray. It came out the First Circuit basically found the same position that the Supreme Court ultimately held, that no, you need a warrant if you're going to search for the cell phone. So what judges do in a common law tradition of our legal system is you have a case built on these facts, and it sets principles and the reasoning of the court to do that. The Constitution is based on common law. Is that what you're saying, that the amendment is based on common law principles? Your Honor, what I'm saying is that our court, we have an adversarial system where judges interpret, and we use the common law. Do you agree with me we're bound by the text of the Sixth Amendment? Your Honor, we are in this sense, but you're— And the text trumps the purpose? Judge Griffin, the text— Do you agree with that or not? No, Your Honor, I don't. You don't. And here's why. For example, does the Second Amendment mean that you only have a right to a muzzleloader because that's what an arm was in 1791? It depends on what the text says. Okay, I mean, the text here says, in all criminal prosecutions, it's hard for me to see how you have a criminal prosecution before you have an indictment. How do you have a criminal prosecution before an indictment? Judge Griffin, if we were looking at the text, criminal prosecution originally only meant the trial. That's what the word meant back in 1791. That was a critical stage of the criminal prosecution. That's what the law was, that you were only entitled to counsel during critical stages once there's a criminal prosecution underway. But there's never been a case that you have a right to counsel prior to a criminal prosecution. Has there? Judge Griffin, I think maybe I misunderstood the question. Is there? No, but my point is that language about critical stages from U.S.P. Wade is part of a point where everyone, historians, U.S.P. Ash says that the right to counsel originally meant you have a right at the trial. That's when you have a right to a lawyer. Yes, sir. I want to impose this following up on Judge Griffin because if we interpret it the way, as I understood Judge Griffin talking about, you don't have a criminal prosecution until there's an indictment, if that's the way we interpret this, where the prosecutor chooses not to seek an indictment but to proceed on an information, if we take that tact, a person could go all the way from investigation to being sentenced without the right, the Sixth Amendment ever attaching. Clearly that's not what we're talking about, is it? Yes, sure. That's because the prosecution controls the method. The prosecution chooses whether to make an offer. That's a situation where you don't have an indictment. The person waives indictment and you proceed on an information. Yes, Your Honor, and I think Judge Griffin was talking about formal proceedings regardless. Before a judge and the proceeding, the prosecution has been initiated. That's not a pre-information. Information is a written document. You know what the charge is. Right. Your Honor, I'm out of time. Well, you can certainly answer these questions or more of a copy. Your Honor, the only thing I can say is there are four other circuits that have recognized that if there's a solidification in language and opinions that, yes, normally it's when there are formal judicial proceedings that the right attaches, but there could be cases when there's a crossing of a threshold from investigation to prosecution by the government. And I would also, I didn't get time, maybe I can address it on rebuttal to show why the state court prosecution, this court should follow the Second and Eighth Circuit and hold that that triggers the right to counsel. That's great. You can address that on rebuttal. You'll have your full rebuttal time. Okay. Thank you, Your Honor. May it please the Court, Kevin Ritz for the United States. The Constitution and the Supreme Court's cases are clear. The right to counsel does not attach until the initiation of formal adversary judicial proceedings. That bright line rule bars Turner's claim, and this court should affirm. Under the text of the Sixth Amendment, there must be a criminal prosecution and an accused before this right attaches. The Supreme Court has consistently... Is it possible for a prosecutor to offer a deal when someone is not already accused of a crime? Yes, Your Honor. Explain to me how. In this case, Your Honor, there were discussions had before an indictment, before an accusation, and the way that the court, the Supreme Court... The offering of the deal is for a crime. Correct, Your Honor. Then you stand accused of a crime if you receive an offer of a certain amount of time of confinement for a certain behavior. A couple of things about that, Your Honor. One, the grand jury plays a role. The prosecutor doesn't charge by himself or herself. Second, the question is more, has adversary judicial proceedings started? The court has tied the nature of the accused, the definition of what accused means and what criminal prosecution means to the role of a judge. A judge has to be involved. A tribunal has to be involved. All the way back to... Does the reasoning in Kirby and Govina actually say that, or does the reasoning say this is a fact-intensive investigation? We want to look at this functional inquiry, and why does that necessarily bespeak this requirement that you be standing before a judge? Those opinions say both. They give us the bright-line attachment rule, and then, as Mr. Hutton said, they discuss the reasoning behind that, and they hearken back to Powell v. Alabama. But in Powell, Justice Sutherland's account of what the Sixth Amendment means, he talked about if charged with a crime. In Johnson v. Zerbst in 1938, when brought before a tribunal. So when the court explained why this bright line is the right way to interpret criminal prosecution and accused, it's explaining that that is when the judicial machinery, to use Rothkerry's words, the judicial machinery has been activated. The person has been brought before a judge. Formal charges have been read. Perhaps restrictions on his liberty have been imposed. And so it's only at that point when adversarial positions have solidified. I guess I'm looking at the language that defines what this fact-based, this functional inquiry is, and I'm seeing things that define adversary judicial proceedings as where the adversary relationship between the government and the accused has solidified, where the state has committed to prosecute, where the accused is confronted with substantive and procedural intricacies of the criminal justice system, and where defendant is faced with prosecutorial purposes of an organized society, which seems to me very much to exist at the intersection of the adversarial nature of the relationship between the state and this individual defendant and the risk of prejudice to that defendant. And at that intersection, aren't we at the offer of a plea that will result in confinement for a particular charge? Let me try to come at that a couple different ways, Judge Tranch. First, if a defendant takes the plea offer, a potential defendant, that person will have the right to counsel no later than the right, the hearing at which he accepts the information, for example. And he can later bring a claim, just like Mr. Turner wants to bring,  But the nature of that pre-indictment negotiation is that the procedural system has not been activated, and so the prejudice that Mr. Turner, for example, suffered. Now, he obviously believes he made a bad decision. Perhaps he did. But the Sixth Amendment did not prohibit him from making that decision and plays no role in protecting him against that decision. Another good example, if I may, is the grand jury. As we were discussing what the practice is for calling someone who's a target or a subject to the grand jury. That person, it probably makes sense to have a lawyer. It would definitely benefit that person to have a lawyer. But it's not the Sixth Amendment that provides that. And our target letter, the target letter in actually the U.S. Attorney's Manual does not say, We will get you a lawyer in practice. I think it's safe to say we would always say, If you are coming to the grand jury as a target or subject, you probably need a lawyer. And we would go to the magistrate if they can't afford it. That kind of thing. Just a clarifying question, because you responded to Judge Strachan's questions. But under the facts of this case, where there was a state prosecution already underway, under the ethics of your office, or the prosecutor's office, if there's an attorney on the state side, under these facts, could a federal attorney go and negotiate with this defendant, absent counsel, where you were talking about federal charges, could they do that? Your Honor, the Sixth Amendment would not prohibit that. But that would just not happen. Ethics or whatever? Well, ethical rules would play a role, Your Honor. And also, the practicalities of this, why would we be engaged in this negotiation if we were not trying to reach a resolution to whatever potential? That's the point, because here, under these facts, hadn't it in fact shifted from investigation to accusation when this particular offer was communicated? No, Your Honor. And the reason is because these are discussions about the case. And yes, Mr. Turner has a pretty good set of facts to come to this court. But in the next case, is it going to be that clear? Is there going to be a specific term of years offer? Is the plea offer going to be super formal? Sometimes it might just be an initial discussion. We may be able to work something out. Sometimes it's the agent working on behalf of the government. And sometimes very closely with the prosecutor. Sometimes not so much. What if the offer is not to prosecute if they become a cooperating witness, all of which would almost of necessity occur before any public formal judicial proceedings which render the person not a good cooperating witness? Precisely, Your Honor. You can make the exact same argument that that's a critical stage, because if the guy says, I'll roll over on my buddies, then I'm not going to get charged. That might even be a more critical thing for his livelihood than being offered something. I think that's true, and we see these kinds of scenarios. It's why courts policing this type of interaction is not a good idea. Well, procedurally what happens typically with these cases is that there's no way for the U.S. Attorney's Office to complete a binding plea agreement without court intervention. You've got to have a charging document. You've got to have either an indictment or an information. And at that point, a judicial officer is going to see the defendant, advise the defendant of his rights. If it's information, he'd have to waive his right to indictment. I mean, you go through the whole rigmarole. The defendant gets the same protections. In my view, it's just that an offer has been made prior. Would you have any way of enforcing that agreement if the defendant, once he got to court, said, I don't want it? No, Your Honor. And to get back to what I think Judge Tranch was concerned about is for the people who engage in these types of negotiations, for the potential defendants, there are adversarial aspects to the relationship. Certainly there are, just like there are adversarial aspects. What about a diversion agreement? You wouldn't have court involvement then. Most likely not, Your Honor, although I'll be frank, I'm not super familiar with how our district or other districts might handle those, but I think that's true. Usually that would be between the government and the person directly, and there would be no judicial involvement. What about the fact, I mean, I know, I understand your argument on the Sixth Amendment, but Frey and Lafleur seem, at least some justices think, went beyond the Sixth Amendment. And so in living in a world beyond the Sixth Amendment, I mean, I think you and I can both agree that the most important time for a defendant to have an attorney is pre-indictment because you can charge bargain, you can sentence bargain, you can do all kinds of things that you can't do post-indictment because now you've got most serious readily provable offense and all those things kicked in. So in the Lafleur-Frey world, why doesn't it make sense to extend this? Your Honor, a few things about that. First of all, I think it depends on the case whether it's the most important stage pre-indictment, but Lafleur and Frey just simply didn't. You agree it's easier to charge bargain then? Absolutely. Yes, Your Honor. But Lafleur and Frey didn't change things here. First of all, they're not attachment cases. They're critical stage cases, just like these other functional cases like Wade, Ash, Moulton. These are critical stage cases, and there is tension, again, to get back to what Judge Strange was getting at. There is tension between the critical stage cases and the attachment cases, but the court has drawn this bright line. And Lafleur and Frey, as the panel in Kennedy pointed out, the dissenting opinion in Lafleur and Frey was pretty vociferous, accused the majority of a lot of things, but it didn't accuse the majority of changing the attachment rule. No one thought that was an attachment case. What about the Teague point? So I know you haven't raised it. I think it's forfeitable, but I'm going to guess that's not a Department of Justice policy not to raise Teague when it comes to this argument. It's not a policy, Your Honor. It's safe to say. I mean, even if we decided it was forfeited, theoretically you lose. The next case would still have to satisfy Teague, wouldn't it? We would say so probably, Your Honor. Yes, it's a new procedural rule, non-watershed. This isn't an ideal vehicle. For Mr. Asking whether the Sixth Amendment right extends to pre-indictment? Sure. I would say it's not. It's the vehicle we have. I don't – this court, the majority of – I'm just making the point. We could announce the new rule because you forfeited the Teague argument, but the next panel would be stuck with the Teague argument, so it's a lot of work for an in-bank court for not coming to much. I think that's right, Your Honor, but we'd actually quibble with your first point that this court could change the rule. This court is bound. It's not my position, but that could happen. Right. This court is bound by the Supreme Court's law, and the critical stage case is, again, different than these attachment cases. There is no ambiguity in these attachment cases. You would concede, then, that this could be, for Lafleur Frye purposes, a critical stage. Your just argument is the right didn't attach. It's a critical stage because you need the advice of counsel. That's correct. You could even be the accused, right, but the right might not attach. You can be accused before indictment, maybe not in the formal sense as the Sixth Amendment understands it. That's the way we would look at it, not in the way the Sixth Amendment requires, and it's no different than the interrogation cases, Messiah v. Moran, the lineup cases, Wade v. Kirby. There is tension, right, because you have an event that occurs after the initiation of formal adversary judicial proceedings, and that very same event or context occurs before the attachment rule, and it hasn't attached. And the court has – Does it play into your calculation that plea bargaining resolves well in the 90% of criminal cases? We understand that concern, Your Honor. It doesn't change our position, and it doesn't change what the Supreme Court has said. In Judge Wiseman's – I'm sorry, concurrence in the Moody opinion, he discussed some of those statistics. And then, of course, in Lafler v. Fry, they discuss how we're in the system of pleas. But just to push back on that a bit, in Judge Wiseman's opinion, he actually cites statistics from the early 1950s where over 90% of cases in the early 1950s were resolved by pleas. And so the notion that this is somehow a new feature of the system that we – It has to do with the exponential number of people charged with crimes today. Perhaps, Your Honor. I mean, we don't think that changes the attachment rule at the end of the day. And Lafler and Fry – I guess I'm trying to understand it on the continuum that exists and why I have no dispute that the indictment is the easiest place to see. But my question is, why is it the exclusive place? I mean, it used to be the trial was the exclusive place, and that's no longer so. So I don't think that we can assume that from the initiation of the Sixth Amendment there was a bright-line rule. I'm struggling to understand why this is the hill to die on, so to speak, for the last bright-line rule for you. Your Honor, our first answer is that the Supreme Court has consistently told us this is where the rule is. To get at whether that's the right rule, we think it is impractical to start drawing the rule anywhere else. It's a clean and clear rule, as Your Honor just said. And once you get into the intricacies of how this might play out and the different paths this could go down in a pre-indictment context, it would be a very difficult thing for your district colleagues to sort out, your state court colleagues, because this rule would apply to the states as well. How do the four circuits that have looked at the rebuttable presumption address the issues that you want to raise here? Your Honor, the four circuits that have been identified as creating this kind of tension, we would actually disagree with the notion that there's a robust circuit split here. All four of those circuits can actually be harmonized with the bright-line rule. In only one of those cases did the right actually attach, and there was a preliminary arraignment in the third circuit case, Mateo. And in all those cases that contemplated this indicta, none of them talked about plea negotiations, I should say. And all of them just kind of thought, well, they looked to some of the language that you were quoting earlier, Judge Tranch. When adverse positions have solidified, when the government is committed to prosecute, and they said, well, you know, it's possible we could maybe conceive of something, but like the first circuit said, it would actually be an extremely limited type of scenario. We don't think there's really a circuit split there. At the end of the day, all of the other courts, I should say, the other six courts that we've cited have squarely, full-stop, bright-line rule attachment applies only at adversary judicial proceedings. Which they define as indictment. I'm sorry? Which is defined by the indictment standard. Yes, Your Honor, indictment information, formal charge. There's a lot of language that can define adversarial proceedings. Correct. So the indictment is the stage in those cases. And that's what Rothgary explored, one type of that, type of attachment. But I guess our bottom-line point on that precedent. So could I interrupt for just a second? I just want to ask you a couple of questions. The charge bargaining that we've been dealing with here, was that in existence at the time of the adoption of the Sixth Amendment? I don't think so, Your Honor, in the way that – certainly not in the way that it plays out today. But I don't know, I guess, to be honest with you, I don't know whether there was that type of pre-charge negotiation that occurred at that time. And the Sixth Amendment uses the word accused as opposed to indicted. Do you see any distinction between indicted and accused? Accused can be a little broader in the sense that it encompasses, of course, an information. And it encompasses – certainly in our office we're very used to the federal system, but it encompasses these various variations on how this might play out in the states as well. Again, that's what Rothgary was concerning. But at the end of the day, accused has been defined and criminal prosecution has been defined in this context as a bright-line rule. And it doesn't trigger until you get to that bright-line rule. Are you familiar with a crime act of 1790 that makes it – they use the word indicted and accused in that act, which is a year before the Sixth Amendment? I don't believe I am, Your Honor. Okay, so you're not aware of any discussion or consideration there might have been of the distinction between indicted and accused and using accused in the Sixth Amendment? We are not. Couldn't accused mean the prosecutor says to a potential defendant, we accuse you of robbing the bank? Not for Sixth Amendment purposes. Not for – what case do you rely on for that principle then? Gouveia, Moran. They say that accused has to be a judicial proceeding? Yes. I thought they said attachment is a judicial – I didn't realize they linked accused, the word accused, to that. I believe in Moran and Gouveia both, in particular, they are saying under the text, which requires a criminal prosecution and accused, formal adversary judicial proceedings is the line we draw. And I don't know that it's in the same sentence. It's accused as opposed to in a criminal prosecution. Correct. And again, to get back to the notion of whether – Why isn't the accused just simply who can assert the right and the timing is in all criminal prosecutions, which is when? In other words, why isn't the accused just a definition of who can actually assert the right? That would be a tricky one for us all to implement, but it would – at the end of the day – Why would it be tricky? I'm sorry. I guess if you're – it wouldn't help us figure out whether people like Mr. Turner can claim this right. Nobody in all criminal prosecutions would, which is the timing mechanism of the Sixth Amendment. So in other words, the criminal prosecution's phrase is what governs here more than the word accused. I don't see where you see it in the Supreme Court cases that it's the word accused that governs. Your Honor, I would have to go back and look, and I don't have those right in front of me. But those cases do talk about the text, and they do talk about how this rule implements that text. And at the end of the day, our view is that ruling for Mr. Turner, moving this line earlier in the process, would not be filling some sort of gap. It would not be moving to fill some gap that the Supreme Court has not told to. A bright line rule by definition is a rule without exceptions, and that's what the Supreme Court has set forth. This court is bound by that, and for that reason, this court should affirm. Okay. Thank you, counsel. Your Honor, a couple points. I did just want to hit on our second argument because there are two circuits. The Second Circuit in Mills and the Eighth Circuit in the Redberg case have held that a state court criminal prosecution will trigger the Sixth Amendment right to counsel for a forthcoming federal prosecution for the same offense under a Blackburger analysis. And the reason they say that is because if you don't do that, you can game the system. So, for example, you could have a drug charge. The DEA, a joint task force, is investigating somebody. They bring a charge in state court. Normally, once that charge is filed, the government under the Sixth Amendment can't, under Messiah, can't talk to the defendant anymore. They have to go through lawyers. Well, all that could happen if that's not the rule is that the DEA agents could go. They could go by the person's place of work, his home. They could badger the defendant. And if he says anything incriminating, they could either bring a federal charge or they could go testify in the state court case because they'd say that Sixth Amendment right didn't attach. We were investigating the unfiled federal charge, not the same state charge. But it would be a Fifth Amendment right to counsel that they violated there, wouldn't it be? No, Judge Kethledge, because the Fifth Amendment is custodial interrogations, and this is a- Well, it has broader implications. I mean- Isn't Messiah a Fifth Amendment case? Anytime you might incriminate yourself, presumably you have the right to have counsel if you choose. What you get out of the Sixth Amendment is the government paying for it and the right to claim ineffective assistance to counsel. That's the differentiation is I understand it. Your Honor, I would respectfully disagree, Judge Givens, because under Messiah v. United States, one of the key rights in most of these cases actually deal with evidentiary issues because the government has talked to a defendant after the right to counsel has been- the Sixth Amendment right is attached without counsel being present. In fact, that's what most of these cases are evidentiary about. So one of the core issues, it's Messiah v. United States and following jurisprudence, is that once the Sixth Amendment attaches, the defendant has a right to be left alone. And the problem is the government can manipulate- It's a Fifth Amendment right, isn't it, in Messiah? No, Your Honor, Messiah is the Sixth Amendment. Okay. Yes, Your Honor. You know better than me. I don't want to- That's all right. I don't mean to take your time. Go ahead. In other areas, the Supreme Court said that the government can manipulate constitutional rights. So under Elkins, the Supreme Court has said state agents can't search a house without a warrant in violation of the Fourth Amendment, find drugs, and then though they can't use it, hand it over to federal officers to use with impunity in a federal prosecution. They can't manipulate- the same thing with the Fifth Amendment in the Murphy case. You can't get a coerced confession in state court and hand it over to the feds. There's a principle that the two can't work together to circumvent constitutional rights. And if this court doesn't follow Mills and Redbird, that's exactly what can happen. That's why a formal charge in one proceeding must trigger the right in another. If there are any other questions- Apparently not. We thank you- Thank you, Your Honor. Mr. Hutton for your argument today and Mr. Ritz for yours. The case will be submitted and you may-